GENERAL CIGAR CO., Inc., v. FIRST NAT. BANK OF PORTLAND, OR.

(Circuit Court of Appeals, Ninth Circuit. June 4, 1923.)

No. 3958.

1. Trial ⊜194(11)—In action for unauthorized payment to plaintiff's embezzling agent, instruction requiring finding for bank, if plaintiff failed to give prompt notice after discovery, held not to direct a verdict.

In an action by a depositor against his bank of deposit to recover money alleged to have been wrongfully and without authority paid on the indorsement of plaintiff's agent and misappropriated by such agent, an instruction requiring the jury to find for defendant if plaintiff was advised of such misappropriation and failed to notify the bank thereof within a reasonable time, was proper, and not objectionable as a peremptory instruction that the canceled checks and monthly bank statements returned to the depositor were sufficient to advise plaintiff of such defalcation.

2. Banks and banking ⊜148(4)—Depositor's failure to discover agent's defalcation, which would have been disclosed by examination of monthly bank statements, and to notify bank promptly, bar to recovery.

In an action against a bank for wrongful and unauthorized payment of checks to plaintiff's agent, who misappropriated the proceeds, where an examination of the monthly statements furnished by the bank and the canceled checks returned therewith would have disclosed the fact that certain items were not accounted for and have led to discovery of the misappropriation, plaintiff was chargeable as matter of law with notice of its agent's defalcation, which consisted in the misappropriation of such items, and plaintiff's failure to object or notify defendant bank for months thereafter, was a complete bar to plaintiff's recovery.

3. Appeal and error ⊜1068(3)—Error in instructions harmless, where appellant not entitled to recover in any event.

In an action by a bank depositor to recover moneys paid plaintiff's agent without authority, and by such agent embezzled, where as a matter of law plaintiff is not entitled to recover on any theory, any error in instructions was necessarily without prejudice to plaintiff.

Appeal from the District Court of the United States for the District of Oregon.

Action at law by the General Cigar Company, Inc., against the First National Bank of Portland, Or., a national banking corporation. Judgment for defendant, and plaintiff brings error. Affirmed.

The plaintiff is engaged in the wholesale and retail cigar business, with branches at Portland, Or., and Seattle and Spokane, in the state of Washington. During the period now in question, it carried accounts in the First National Bank of Portland, the Union National Bank of Seattle, and the Spokane & Eastern Trust Company of Spokane. The present action was instituted against the Portland Bank to recover the sum of upwards of

$10,000 misappropriated by the cashier of the Portland branch. The complaint originally contained 11 causes of action in all, but a reference to the first is deemed sufficient for present purposes. It appears therefrom that on the 13th day of December, 1919, the plaintiff, through an agent of the Spokane branch, drew a check on the Spokane Bank in the sum of $1,293.58, payable to itself; that the check was transmitted to the Portland branch in the usual course of business; that upon receipt of the check by the Portland branch it was indorsed by rubber stamp, "Pay to the order of First National Bank, 355 Portland, Or., 355. General Cigar Co., Inc., M. A. Gunst Branch, M. A. Gunst & Co.;" that the cashier of the Portland branch cashed the check and converted the proceeds to his own use, and that the cashier was without authority so to do, or to do otherwise than deposit the amount to the credit of the plaintiff in the Portland bank.

The answer alleged that during the period covered by the complaint each of the banks in which the plaintiff carried accounts rendered monthly statements to the plaintiff, returning all canceled checks, together with an itemized statement of the plaintiff's accounts with the bank, thereby advising the plaintiff as to the exact condition of its account with the bank and the amounts drawn from the bank by the cashier; that plaintiff made no objection to these statements and gave no information touching any irregularity concerning the same. It further appeared that the plaintiff discovered the defalcation in the latter part of May, 1921, and failed to notify the defendant thereof until the 20th day of July following. Upon the issues thus presented, the court charged the jury, in part, as follows:

"I instruct you further that the burden of proof lies with the plaintiff to show that the defendant bank paid out money without authority from the plaintiff, either real or apparent. * * * It is alleged, among other things, that at all times from July 23, 1919, to December 15th of the same year, the plaintiff, in addition to the three accounts carried in the defendant bank, carried accounts in the Spokane & Eastern Trust Company of Spokane and the Union National Bank of Seattle, and that each of these banks, including the defendant bank, rendered a monthly statement to plaintiff of its account therewith; that thereby the plaintiff was advised as to the exact condition of its account in each of these banks respectively, touching the amounts of money drawn from the bank by Turrell, but made no objection thereto, and gave the bank no information touching any irregularity affecting such accounts."

"If you find from the evidence in the case that such were the facts, and that the plaintiff was so advised, and failed, within a reasonable time, to advise the defendant bank of such irregularities, then the plaintiff would be estopped now to assert that defendant was liable for its acts in paying the money over to Turrell in pursuance of his request or demand, and your verdict should be for the defendant. * * * I instruct you that, if you believe from the evidence that plaintiff learned, on or about May 28, 1921, of Turrell's fraud in connection with the moneys received from the defendant bank on the checks involved here, and you further believe that plaintiff did not promptly notify the defendant that plaintiff would hold it responsible for such moneys paid to Turrell, then you will find for the defendant. Prompt notification would be such as a prudent man would exercise within a reasonable time so as to advise the bank of the situation."

The jury returned a verdict in favor of the defendant, and the giving of the foregoing instructions, among others, is assigned as error.

Dey, Hampson & Nelson and Geo. L. Buland, all of Portland, Or., for plaintiff in error.

Dolph, Mallory, Simon & Gearin, John M. Gearin, and Edgar Freed, all of Portland, Or., for defendant in error.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge (after stating the facts as above). [1] The plaintiff in error earnestly insists that the charge of the court, based

on the canceled checks returned and the monthly statements rendered by the several banks was, in effect, a peremptory instruction to find for the defendant in error. We do not so construe the charge. The jury were simply instructed that, if they found as a fact that the plaintiff in error was advised of the misappropriation of funds by the cashier, and failed to notify the defendant in error of such misappropriation within a reasonable time, the plaintiff in error was not entitled to recover, and this we believe to be a correct statement of the law. If the charge is objectionable from any standpoint, it is because of the fact that it authorized the jury to find that the canceled checks and bank statements advised the plaintiff of the defalcation, and this is the burden of the argument in support of the exception to the instruction complained of. The plaintiff in error contends that the checks returned and statements rendered by each of the banks, when considered and examined separately, disclosed no irregularity, and that beyond this it was not required to go. In other words, that it was not required to examine the statements rendered by the Portland bank, for the purpose of ascertaining whether checks drawn by itself on the Seattle and Spokane banks and indorsed to the Portland bank had been deposited in the latter bank. Much reliance in this connection is placed on National Bank of Commerce v. Tacoma Mill Co., 182 Fed. 1, 104 C. C. A. 441, decided by this court. The following extract from the opinion in that case will sufficiently disclose the point decided:

"But it is strenuously urged that, as the Mandan Mercantile Company received a credit on the 5th of April, 1907, and the item went into the cash account of the mill company, it being an item of payment which in the usual course of business should have passed to the credit of the mill company in the bank, the mill company should have taken note of the fact, and that, by pursuing the further inquiry which was subsequently pursued, and sending out to customers for their statements of account, the peculations of Pinkham would have been disclosed, and thus the mill company would have been enabled to protect the bank from further cash payments, and ought to have done so. We think, however, the duty of a depositor towards his bank in relation to the examination of the bank statements, made in connection with its writing up and balancing the depositor's passbook, does not reach to that extremity. The statements, as we have shown, are rendered for the purpose of advising the depositor of the state of his account. If those statements tally with the deposit slips made up by the depositor and the checks drawn against the bank, and if the balances agree one with the other, the depositor is not obliged to look further, nor to bear in mind some irregularity that may appear elsewhere in his general books, although a searching inquiry might lead to a discovery of the fraud."

There is a wide difference between the two cases. In the Tacoma Mill Co. Case this court held as a matter of law that the depositor was not required to go to his general books of account to ascertain whether a customer had paid his bill, and then pursue the inquiry further by consulting the customer. Here the plaintiff in error was not required to look beyond the bank statements and canceled checks. An examination of these would disclose the following information: First, that the check had been drawn on the Spokane bank; second, that the check bore the rubber stamp indorsement to the Portland bank; third, that the check was paid by the Spokane bank; and, finally, that the proceeds of the check had not been deposited in the Portland

290 F.—10

bank, or otherwise accounted for. The plaintiff in error contends that the rubber stamp indorsement authorized a deposit of the check in the Portland bank, and nothing more, and if this be true the rubber stamp indorsement on the Spokane check was tantamount to a deposit slip of the Portland bank, and the statement rendered by that bank disclosed no such deposit.

[2] For these reasons, we are of the opinion that the plaintiff in error was chargeable with notice of the defalcation as a matter of law, and its failure to object or notify the defendant within a reasonable time is a complete bar to a recovery. If we are correct in this conclusion, any error in the instructions is necessarily without prejudice, and we are not called upon to approve or disapprove the instructions complained of.

Finding no prejudicial error in the record, the judgment is affirmed.